

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 1 0 2004

LUTHER D. THOMAS, Clerk
By: *F. Finckley*
Deputy Clerk

# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CAREY SCOTT NEAL, | ) |
|     Plaintiff | ) |
| | ) CIVIL ACTION |
| | ) FILE NO. 1:03-CV-0761-JEC |
| vs. | ) |
| | ) |
| EQUIFAX INFORMATION SERVICES LLC | ) |
| OLYMPUS SERVICING, L.P., and | ) |
| WILSHIRE CREDIT CORPORATION | ) |
|     Defendants | ) |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AGAINST EQUIFAX INFORMATION SERVICES LLC
### ON THE ISSUE OF LIABILITY

COMES NOW, Plaintiff Carey Scott Neal, by and through undersigned

counsel, and respectfully requests that this Honorable Court grant Judgment in

favor of plaintiff and against Equifax Information Services LLC (hereinafter

"Equifax"), on the issue of Equifax's liability, for willful and/or negligent violation

of the requirements of the Fair Credit Reporting Act, under 15 U.S.C. §§ 1681e(b);

1681h; and 1681i(a), as follows:

1.

Plaintiff's Motion for Summary Judgment Against Equifax Information

1



Services LLC on the Issue of Liability is based upon the following: (a) Plaintiff's Complaint; (b) the discovery deposition of Equifax's corporate representative, Ms. Alicia Fluellen; and (c) any and all other pleadings and discovery which may be properly considered by the Court when deciding whether or not to grant Plaintiff's Motion for Summary Judgment Against Defendant Equifax on the issue of liability.

2.

Said Complaint, depositions, together with the remainder of the pleadings and discovery, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

WHEREFORE PLAINTIFF CAREY SCOTT NEAL PRAYS that this Honorable Court grant Judgment in favor of Plaintiff and against Equifax Information Systems LLC, on the issue of Equifax's liability, for willful and/or negligent violation of the requirements of the Fair Credit Reporting Act.

This 10th day of May, 2004.

Respectfully submitted,

LAW OFFICE OF LISA D. WRIGHT, LLC

By: _____

Lisa D. Wright
Attorney for Plaintiff
Georgia State Bar No. 268781

235 Peachtree Street NE,
Suite 888
Atlanta, Georgia 30303
404-588-1181 (Office)
404-588-1182 (Fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CAREY SCOTT NEAL,<br>    Plaintiff | )<br>)<br>) CIVIL ACTION<br>) FILE NO. 1:03-CV-0761-JEC |
| vs. | )<br>) |
| EQUIFAX INFORMATION SERVICES LLC<br>OLYMPUS SERVICING, L.P., and<br>WILSHIRE CREDIT CORPORATION<br>    Defendants | )<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and

foregoing PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST

EQUIFAX INFORMATION SERVICES LLC ON THE ISSUE OF LIABILITY

and supporting memorandum, upon opposing counsel, by depositing a copy of same

in the United States Mail with adequate postage thereon for prompt delivery by the

United States Postal service and addressed as follows:

Mr. John J. Friedline
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

Mr. Robert E. Mulholland
Savell & Williams
1500 The Equitable Building
100 Peachtree Street
Atlanta, GA 30303

This 10th day of May, 2004.

Respectfully submitted,

LAW OFFICE OF LISA D. WRIGHT, LLC

By
Lisa D. Wright
Attorney for Plaintiff
Georgia State Bar No. 268781

235 Peachtree Street, NE
Suite 888
Atlanta, Georgia 30303
404-588-1181
404-588-1182 (Fax)

N O T I C E
- - - - - -


To:  John J. Friedline, Esq.
     Kilpatrick Stockton
     Suite 2800
     1100 Peachtree Street
     Atlanta, GA  30309-4530



May 10, 2004



                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION


Carey Scott Neal,

              plaintiff                    CIVIL ACTION

         v.                                NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

              defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
            -------------------------------------------


     On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.    Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.    Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  James P. Blum, Esq.
     Pendergast & Jones
     South Terraces, Suite 1010
     115 Perimeter Center Place
     Atlanta, GA  30346


May 10, 2004


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Carey Scott Neal,

                plaintiff                 CIVIL ACTION

          v.                              NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

                defendant

              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
          -------------------------------------------------

     On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.    Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

NOTICE
- - - - - -

To:  Howell Alexander Hall, Esq.
     Pendergast & Jones
     South Terraces, Suite 1010
     115 Perimeter Center Place
     Atlanta, GA  30346


May 10, 2004


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                           ATLANTA DIVISION

Carey Scott Neal,

                 plaintiff                CIVIL ACTION

            v.                            NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

                 defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              ---------------------------------------------

        On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.   Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by af-fidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  Peter S. Wahby, Esq.
     Greenberg Traurig
     600 Three Galleria Tower
     13155 Noel Road
     Dallas, TX  75240


May 10, 2004


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION

Carey Scott Neal,

                    plaintiff              CIVIL ACTION

          v.                               NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

                    defendant


           NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
           ---------------------------------------------

     On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.   Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

                                        Luther D. Thomas, Clerk
                                        United States District Court
                                        Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - - -

To:   Scott J. Ryskoski, Esq.
      Greenberg Traurig
      600 Three Galleria Tower
      13155 Noel Road
      Dallas, TX  75240


May 10, 2004


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Carey Scott Neal,

                    plaintiff              CIVIL ACTION

          v.                               NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

               defendant


               NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
               --------------------------------------------

        On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:   Scott Andrew Wandstrat, Esq.
      Savell & Williams
      1500 The Equitable Building
      100 Peachtree Street
      Atlanta, GA  30303


May 10, 2004


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION


Carey Scott Neal,

                    plaintiff              CIVIL ACTION

            v.                             NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

                    defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
      --------------------------------------------------


      On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

      Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.    Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.    Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  Robert Edward Mulholland, Esq.
     Savell & Williams
     1500 The Equitable Building
     100 Peachtree Street
     Atlanta, GA  30303


May 10, 2004


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION

Carey Scott Neal,

                plaintiff                    CIVIL ACTION

          v.                                 NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

                defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
            --------------------------------------------

       On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

       Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  Lisa Dionne Wright, Esq.
     Law Office of Lisa D. Wright
     Suite 888
     235 Peachtree Street NE
     Atlanta, GA  30303


May 10, 2004


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Carey Scott Neal,

                    plaintiff                    CIVIL ACTION

          v.                                     NO. 1:3-cv-761-JEC

Equifax Credit Information Services, Inc., et al,

               defendant


NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

     On 5/10/04, Carey Scott Neal,

filed a motion for  summary judgment in this Court, case document

number 94.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.   Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

# ORIGINAL

MAY 1 0 2004

LUTH~ ... . :lerk
By: *7.funcky* Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CAREY SCOTT NEAL,<br>　　　Plaintiff | ) |
| | ) |
| | ) CIVIL ACTION |
| | ) FILE NO. 1:03-CV-0761-JEC |
| vs. | ) |
| | ) |
| EQUIFAX INFORMATION SERVICES LLC | ) |
| OLYMPUS SERVICING, L.P., and | ) |
| WILSHIRE CREDIT CORPORATION | ) |
| 　　　Defendants | ) |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AGAINST EQUIFAX INFORMATION SERVICES LLC
## ON THE ISSUE OF LIABILITY

COMES NOW Plaintiff, Carey Scott Neal, by and through undersigned

counsel, and respectfully presents the following law and argument in support of his

motion for summary judgment on the issue of liability of Equifax Information

Services LLC (hereinafter "Equifax"), as follows:

### I. FACTUAL BACKGROUND

Plaintiff applied for credit with various creditors and was repeatedly denied

credit based upon the inaccurate and derogatory data attributed to him by Equifax.

1

94

The Plaintiff's potential creditors obtained consumer reports ("credit reports") from Equifax which contained inaccurate and misleading information regarding the Plaintiff.

Plaintiff notified Equifax requesting reinvestigation of multiple items in his credit report prepared and issued by Equifax due to the inaccurate and misleading data, pursuant to FCRA, 15 U.S.C. 1681i(a). However, Equifax continued to prepare and issue consumer reports about plaintiff wherein Equifax reported inaccurate credit data of Plaintiff. In doing so, Equifax failed to employ reasonable procedures to assure the maximum possible accuracy of the consumer credit reports it issued about, of and concerning plaintiff in violation of FCRA, 15 U.S.C. §1681e(b).

Equifax personnel advised plaintiff that the inaccurate information in his credit reports had been corrected, when in fact it had not been corrected, in violation of FCRA, 15 U.S.C. § 1681h(c). Equifax continued to report inaccurate and misleading information regarding the Plaintiff into the credit reports it prepared and attributed to plaintiff and issued to third parties to rely upon and use, in violation of FCRA, 15 U.S.C. § 1681i(a).

2

In this case, Equifax created three credit files for the Plaintiff. One credit file was in the name of "Scott Neal." The other two credit files were in the name of Carey Neal. The two Carey Neal credit files should have contained the same accurate information; however, the credit files did not contain the same accurate information regarding the Plaintiff.

After the several requests for reinvestigation of the inaccurate and misleading information the following information remained in the Plaintiff's Carey Neal credit files: one credit file contained accurate Olympus Servicing, L.P. (hereinafter "Olympus") tradeline information and inaccurate information regarding the Wilshire Credit Corporation (hereinafter "Wilshire") tradeline; the second credit file included inaccurate Olympus tradeline information and accurate Wilshire information.

Equifax specifically designed and operates a computer database search and record system which creates multiple credit files for consumers with the same name, social security number, and date of birth without serious regard to variations in those multiple credit files. Equifax is aware of its defective computer database search and record system which creates multiple credit files for consumers with

differing information in each file, but Equifax has chosen to continue to utilize the system despite knowledge that many consumers, including plaintiff will be denied credit and damaged by the false consumer reports the system causes to be prepared, issued, sold and published to third parties, including its subscribers.

Equifax failed to employ and use reasonable procedures to assure the maximum possible accuracy of consumer reports it prepared, issued, sold and published to third parties, including its subscribers and Equifax failed to comply with its obligations under the FCRA. Equifax failed to maintain reasonable procedures to meet its duties under the FCRA provisions with regard to the preparation and issuance of credit reports, the handling of disputes, the conducting of reinvestigations, and correction of file data. Equifax's many and varied violations of the FCRA were willful and/or, alternatively, negligent.

## II. STATEMENT OF STANDARD OF REVIEW

Plaintiff requests that this Honorable Court enter summary judgment on the issue of the liability of Equifax in favor of plaintiff. Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." _Celotex Corp. v. Catrett_, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." _Morisky v. Broward County_, 80 F.3d 445, 447 (11th Cir. 1996).

The movant bears the responsibility of asserting the basis for his motion. _Celotex_, 477 U.S. at 323; and _APCOA, Inc. v. Fidelity National Bank_, 906 F>2d 610, 611 (11th Cir. 1990).  However, the movant is not required to negate his opponent's claim.  The movant may discharge his burden merely "showing'…that is, pointing out to the district court… that there is an absence of evidence to support the non-moving party's case." _Celotex_, 477 U.S. at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." _Id_. at 324.

Summary judgment is appropriate if jury, viewing all facts and any

reasonable inferences from facts in light most favorable to nonmoving party, could not reasonably return verdict in that party's favor. *San Pedro v. U.S.*, 79 F.3d 1065 (11th Cir. 1996).

Plaintiff submits that he has presented adequate undisputed facts, through the pleadings, depositions, and answers to interrogatories, supporting a finding that there is no genuine issue as to any material fact to a finding that Plaintiff has proven that Equifax has repeatedly violated the FCRA, in multiple respects, and that Plaintiff is entitled to the entry of a Judgment as a matter of law in accordance with Rule 56 of the Federal Rules of Civil Procedure.

## III. ARGUMENT AND CITATION OF AUTHORITY

## FAIR CREDIT REPORTING ACT

Plaintiff's Complaint seeks to recover damages for Defendant Equifax's violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §§ 1681e(b), 1681h, and 1681i(a).

The FCRA is designed to protect consumers from inaccurate or arbitrary information in a consumer report and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner. *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987); *St. Paul*

6

*Guardian Ins. Co. v. Johnson*, 884 F.2d 881 (5th Cir. 1989) (Tex.); *Pinner v.*

*Schmidt*, 805 F.2d 1258 (5th Cir. 1986)(La.); *Nikou v. INB Nat. Bank*, 638 N.E.2d

448 (Ind. App. 5 Dist. 1994). Further, it is fashioned so as to protect the credit

worthiness and reputation of every consumer. *Ackerly v. Credit Bureau of Sheridan,*

*Inc.*, 385 F.Supp. 658 (U.S.D.C. Wyo. 1974); *Klapper v. Shapiro*, 586 N.Y.S.2d

846 (N.Y. Sup. 1992). The FCRA was crafted to protect consumers from the

transmission of inaccurate information about them. *Kates v. Croker National Bank*,

776 F.2d 1396, 1397 (9th Cir. 1995).

The FCRA, like the other portions of the Consumer Credit Protection Act of

1968, is to be liberally construed. *Guimond v. Trans Union Credit Info. Co.*, 45

F.3d 1329 (9th Cir. 1995) (Cal.). It's provisions are to be construed in favor of

recovery by the consumer and against the credit reporting agency, user of credit

information and other violator. Id. The FCRA is "to prevent consumers from being

unjustly damaged because of inaccurate or arbitrary information in a credit report."

*Equifax, Inc. v. Federal Trade Comm'n*, 678 F.2d 1047, 1048 (11th Cir.1982),

quoting S.Rep. No. 517, 91st Cong., 1st Sess. 1 (1969).

Virtually every credit report is a "consumer report," however not every

"consumer report" will be a "credit report." Consumer reports encompass any and all written communications from a consumer reporting agency which bear on the credit worthiness, character, credit capacity, etc., of a consumer. *15 U.S.C. 1681, et. seq.* A "consumer report" is virtually any information communicated by a consumer reporting agency for purposes set forth in the FCRA. *Hoke v. Retail Credit Corp.*, 521 F.2d 1079 (4th Cir. 1975) (N.C.).

The standard credit report contains a vast amount of personal information, trade line (account) information, and public record data. The report also contains a listing of credit inquiries, who are those persons who have peered into the consumer's file, and "credit scoring," including denial codes/risk factors (which are the credit reporting agencies' factor and evaluation of the consumer's credit data and suggested ostensible reasons to deny credit, etc., if the creditor chose to do so) which is the credit bureau's numerical assessment of the consumer as a credit risk.

A.    *Plaintiff is entitled to Summary Judgment Against Defendant Equifax for its Failure to Comply with FCRA, 15 U.S.C. § 1681e(b).*

Plaintiff's burden under 1681e(b) is as follows: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate

8

information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer

reporting agency's negligence proximately caused the plaintiff's injury. _Guimond v._

_Trans Union Credit Information Co._, 45 F.3d 1329, 1333 (9th Cir. 1995) (Cal.);

_Henson v. CSC_, 29 F.3d 280, 284 (7th Cir. 1994); _James J. O'Connor v. Trans_

_Union Corp._, Civil Action No. 97-4633 (U.S.D.C. E.D. Pa. 9/28/99); _Houston v._

_TRW Info. Services, Inc._, No. 88-CIV-0186, 1989 Westlaw 59850 (S.D.N.Y.

5/2/89).

The standard of accuracy for credit reports embodied in FCRA is an

objective measure that should be interpreted in an even-handed manner toward

interests of consumers and creditors in fair and accurate reporting. _Cahlin v._

_GMAC_, 936 F.2d 1151 (11th Cir. 1991) (Fla.); _15 U.S.C. 1681e(b)_. Technical

accuracy is not the standard, a consumer report must be accurate to the maximum

possible extent. In essence, the trier of fact must weigh potential that information

will create a misleading impression against availability of more accurate

information and the burden of providing such information. _Alexander v. Moore &_

_Associates, Inc._, 553 F.Supp. 948 (U.S.D.C. Hawaii 1982); _Cisneros v. U.S._

_Registry, Inc._, 46 Cal.Rptr.2d 233, 39 C.A.4th 548 (Ca. App. 2d Dist. 1995).

Determining accuracy means assessing more than factual truthfulness and requires analyzing the reportings for their potential to mislead. This factor must be weighed against the availability of more accurate information and the burden of producing such information. *Alexander v. Moore and Associates, Inc.*, 553 F.Supp. 948 (U.S.D.C. Haw. 1982); *Koropoulos v. The Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984).

Reasonableness of a defendant's behavior and procedures are assessed by balancing "the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Jones v. Credit Bureau of Garden City, Inc.*, 703 F.Supp. 897 (U.S.D.C. Kan. 1988).

The "ability to report on the credit habits of its customers is a powerful tool designed, in part, to wrench compliance with payment terms from its cardholder." Thus, like its symbiotic customers, a credit reporting agency's "refusal to correct mistaken information can only be seen as an attempt to tighten the screws on a non-paying customer." Miranda-Rivera v. Bank One, 145 F.R.D. 614, 1993 Westlaw 30681 (U.S.D.C. Puerto Rico 1993); "*Credit Cards In America*," *The John Marshall Journal of Computer and Information Law*, John Marshall Law School

10

Law Review, Chicago, Illinois, Vol. XIII, Issue 4, pp.573-584 (Summer, 1995).

**1.    Defendant Equifax was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report.**

Equifax maintained three credit files for the Plaintiff: two in the name of Carey Neal and then one in the name of Scott Neal. Equifax testified that its procedure is to notify the consumer of all credit files Equifax has on them.

On September 3, 2002, Equifax received a request for investigation of inaccurate information in the Plaintiff's credit report. On September 4, 2002, Equifax completed an investigation of disputed information concerning the Plaintiff in his credit file. Equifax received a document which stated the Olympus late payments could be removed from the Plaintiff's credit file. After this investigation was completed, the revised credit file was sent to the Plaintiff. Plaintiff only received notification regarding one of the credit files which Equifax maintained on the Plaintiff, he did not receive notification regarding all three credit files. Only one of the Plaintiff's credit files was updated on September 4, 2002. The other two credit files were not updated.

On November 19, 2002, Equifax received another request for investigation. This request for was for a reinvestigation of the Wilshire account reporting on the

11

Plaintiff's credit report.  On November 21, 2002, Equifax completed its reinvestigation and notified the Plaintiff that the prior paying history from the Wilshire account had been deleted.

On November 22, 2002, Equifax began and completed another reinvestigation of the Wilshire account information contained in the Plaintiff's credit report.  Equifax then reported to the Plaintiff that there were no late payments on the Wilshire credit account because there were not any.

On November 26, 2002 Equifax received the following notification from a credit grantor: "****This (Olympus Servicing LP) was corrected by Equifax Rapid Resolve back in August.  Now it is showing again.  Also, he has two files under Carey Neal and Scott Neal.  Please combine so we can get an accurate score***".  However, Equifax did not combine the Plaintiff's credit file in response to this request.

On December 2, 2002, Plaintiff telephoned Equifax to dispute the information reported in the Olympus tradeline, specifically that a late payment history was reporting on his credit reports.

On the Plaintiff's March 11, 2003 credit report, Equifax reported the

Wilshire Credit Corporation account a zero account balance and a 30-day late payment. However, Equifax had previously notified the Plaintiff that the prior paying history had been deleted from the Wilshire account.

On the Plaintiff's March 26, 2003 credit report, Equifax reported for the Wilshire account "not more than two payments past due."

Equifax testified to the following "when Equifax splits a credit file, its done manually. A person is doing it. They are to remove the duplicates so that when new reporting comes in via tape it's to go to the one that is already there. It doesn't appear that this was done for Carey Neal. That's why we've got duplicates."

Equifax's corporate representative went on to further testify that their policy is to combine consumer credit files if it can be done and that there is no sense in having a consumer with two different files needlessly; and that it did not seem possible that Equifax would have been able to successfully combine the Plaintiff's credit files. However, after this lawsuit was filed, one complete credit file was created for the Plaintiff.

Despite the fact that Equifax sent the Plaintiff notifications that the prior late payment histories on the Olympus and Wilshire accounts had been deleted, Equifax

13

continued to issue credit reports reporting late payments for those accounts.

The evidence clearly supports the finding that Equifax acted willfully and/or negligently in failing to follow reasonable procedures to assure the accuracy of its credit report regarding the Plaintiff. Equifax knew it had three credit files for the Plaintiff and failed to follow procedures to ensure the accuracy of all credit files it maintained for the Plaintiff.

### 2.   Defendant Equifax reported inaccurate information about the Plaintiff.

Equifax notified the Plaintiff on September 4, 2002 that the inaccurate information concerning the Olympus credit account had been deleted from his credit file; however, Equifax continued to issue and publish inaccurate late payment information on the Olympus account.

Equifax notified the Plaintiff on November 21, 2002 that the inaccurate information concerning the Wilshire credit account had been deleted from his credit file; however, Equifax continued to issue and publish inaccurate late payment information on the Wilshire account.

On the Plaintiff's March 11, 2003 credit report, Equifax reported the Wilshire Credit Corporation account a zero account balance and a 30-day late

payment. However, Equifax had previously notified the Plaintiff that the prior paying history had been deleted from the Wilshire account.

In September 2002, October 2002, and November 2002, Equifax issued credit reports reporting the Plaintiff's Olympus account inaccurately as one 30-day late payment, one 60-day late payment and two times 90-days late. On the Plaintiff's March 26, 2003 credit report, Equifax reported for the Wilshire account "not more than two payments past due." Equifax continued to report inaccurate information regarding the plaintiff, in spite of the fact that it had been repeatedly notified of the inaccuracies.

### 3.    The Plaintiff was injured due to Equifax's negligence.

In August 2002 and November 2002, Am Trust requested Plaintiff's consumer credit report from Equifax and Equifax prepared, issued, sold and published a false consumer report about the plaintiff to its subscriber, Am Trust. As a result of the false consumer report, Plaintiff was denied credit. On November 20, 2002, Am Trust requested a second consumer credit report from Equifax and Equifax again prepared, issued, sold and published a false consumer report about the Plaintiff to Am Trust.

15

On February 12, 2003, Omni National Bank requested Plaintiff's consumer credit report from Equifax and Equifax prepared, issued, sold and published a false consumer report about the plaintiff to its subscriber, Omni Trust.  As a result of the false consumer report, Plaintiff was denied credit.

Equifax's negligence in failing to follow reasonable procedures to ensure the accuracy of the Plaintiff's credit report was the proximate cause of the Plaintiff's injuries.

**B.    *Plaintiff is entitled to Summary Judgment Against Defendant Equifax for its Failure to Comply with FCRA, 15 U.S.C. § 1681h(c).***

The credit reporting agency shall provide trained personnel to explain to the consumer any information furnished to him pursuant to the Act. Jones v. Credit Bureau of Garden City, Inc., 703 F.Supp. 897, 901 (D. Kan. 1988).  The burden is on the consumer to establish that a credit reporting agency's procedures for training or disclosure are deficient, pursuant to 15 U.S.C. § 1681h(c). Id. at 901.

Equifax's representatives failed to notify the Plaintiff that he had three credit files.  On September 4, 2002, an Equifax representative sent a written notification to the Plaintiff stating that the Olympus derogatory information had been deleted; however, the Equifax representative failed to communicate to the Plaintiff that this

information was deleted from only one of his credit files and that the other two

credit files which existed for the Plaintiff may contain inaccurate information.

Because Equifax has failed to train its personnel on its policies and procedures for

communicating credit information to consumers with multiple credit files, Equifax

has not complied with the requirements under FCRA, 15 U.S.C. § 1681h(c) and is

therefore liable to the Plaintiff for the damages he has suffered.

**C.**      ***Plaintiff is entitled to Summary Judgment Against Defendant Equifax for its Failure to Comply with FCRA, 15 U.S.C. § 1681i.***

Section 1681i(a) requires a consumer reporting agency to investigate and

delete inaccurate or unverifiable information disputed by a consumer within a

"reasonable time" from receipt of a dispute or notice of error. *Stevenson v. TRW,*

*Inc.*, 987 F.2d 288, 292 (5th Cir. 1993).

Equifax failed to comply with the reinvestigation requirements in that it

failed to investigate and correct all credit files which it associated with the Plaintiff.

Equifax failed to fully and adequately investigate the three credit files it maintained

for the Plaintiff.  Equifax continually reported inaccurate and misleading

information in the credit reports it issued to subscribers, despite the fact that it had

received numerous requests for reinvestigation and had reported to the Plaintiff that

17

the inaccurate information was deleted.  Because Equifax failed to comply with the

requirements of 15 U.S.C. § 1681i, the Plaintiff is entitled to Summary Judgment

on the issue of liability against Defendant Equifax.

**D.      *Plaintiff is entitled to Damages for Defendant Equifax's Willful and/or Negligent Failure to Comply with the FCRA.***

The requirement that the consumer sustain some injury to establish a cause of

action is triggered when the consumer reporting agency issues an erroneous reports

to an institution with whom the consumer was (is) dealing. *Hyde v. Hibernia Nat.*

*Bank in Jefferson Parish*, 861 F.2d 446 (5th Cir. 1988), cert. denied, *Credit Bureau*

*Services - New Orleans v. Hyde*, 109 S.Ct. 3199, 491 U.S. 910, 105 L.Ed.2d 706.  If

consumer proves malice or willful intent to injure then injury to consumer is

presumed and damages are presumed. *Rasor v. Retail Credit Co.*, 87 Wash.2d 516,

554 P.2d 1041.

Plaintiff has sustained injuries due to the erroneous reports prepared and

issued by Equifax to its subscribers.  Therefore, Plaintiff has clearly established a

cause of action against Equifax.

The FCRA describes violations of the Act as negligent or willful.  While the

courts have routinely adopted the plain language meaning of "negligent," the courts

have not been so clear about what "willful" means.

The FCRA is to be liberally construed and in favor of the consumer and recovery by the consumer. The FCRA was crafted to protect consumers, not credit reporting agencies, from the transmission of inaccurate information about them. *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1995); *Wilson v. Rental Research Services, Inc.*, 165 F.3d 642, 643 (8th Cir. 1998). It is to be liberally construed. *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881 (5th Cir. 1989) (Tex.); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986) (La.); *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987); *Nikou v. INB Nat. Bank*, 638 N.E.2d 448 (Ind. App. 5 Dist. 1994); *Ackerly v. Credit Bureau of Sheridan, Inc.*, 385 F.Supp. 658 (U.S.D.C. Wyo. 1974); *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1995); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) (Cal.).

To be in willful non-compliance with the FCRA, a defendant must have knowingly and intentionally committed an action or inaction in conscious disregard for the rights of others. Proof of malice or evil motive is not necessary. *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993); *Pinner v. Schmidt*, 805 F.2d 1258,

19

1263 (5th Cir. 1986); *Fischl v. GMAC*, 708 F.2d 143, 151 (5th Cir. 1983); *Jones v. Credit Bureau of Huntington, Inc.*, 703 F.Supp. 897 (U.S.D.C. Kan. 1988).

In this action, Equifax knowingly and intentionally failed to communicate to the Plaintiff that Equifax maintained three credit files for him. Equifax knowingly and intentionally failed to update the inaccurate information in each of the three credit files it maintained on the Plaintiff. Equifax consciously disregarded its internal information regarding the Plaintiff's three credit files, and continued to report inaccurate information concerning the Plaintiff.

In *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir. 1976), the Eighth Circuit upheld an award of punitive damages where the credit reporting agency acted to mislead the consumer about the contents of his credit file and flatly refused to reveal the contents of the credit file. The court noted that defendant sought to block plaintiff in his attempt to secure the rights given to him by the FCRA. Not only did defendant delay and mislead plaintiff on the occasion of his first request for disclosure, but it even did so on a second and third occasion...."

Plaintiff must show more than "that the consumer reporting agency failed to investigate adequately and correct information contained in a consumer report."

_Matise v. Trans Union Corp.,_ 1998 Westlaw 872511 at p.6 (U.S.D.C. N.D. Tex. 1998).

Of course, here, Neal shows a whole host of terrible acts by Equifax. Plaintiff Neal respectfully suggests that he has met that burden and done so, in large part, through Equifax's own testimony and documents. Equifax cannot be permitted to contrive a different outcome. Equifax failed to notify the Plaintiff that he had three credit files. Plaintiff had no method of knowing that Equifax maintained three credit files for him.

"(T)o show willful noncompliance with the FCRA, (the consumer) must show that (the credit agency) 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' _but need not show 'malice or evil motive.'_" Cushman, 115 F.3d 220, 226 (3d Cir. 1997) (citing Philbin, 101 F.3d at 970). In _Cushman_, the Third Circuit held that only defendants who have engaged in actions "_on the same order_ as willful concealments or misrepresentations" have committed a willful violation for FCRA purposes, and are subject to punitive damages under 1681n. Cushman, 115 F.3d at 227. To justify an award of punitive damages, O'Connor must prove that Trans Union adopted its reinvestigation policy

21

either knowing that policy to be in contravention of the rights possessed by
consumers pursuant to the FCRA or in reckless disregard of whether the policy
contravened those rights." *James J. O'Connor v. Trans Union Corp.*, Civil Action
No. 97-4633 (U.S.D.C. E.D. Pa. 9/28/99). Reckless disregard connotes that the
speaker entertained actual doubt about the truth of the statement. *Wiggins v. Equifax
Services. Inc.*, 848 F. Supp. 213, 223 (D.D.C. 1993).

Plaintiff must merely show direct or circumstantial evidence of willful
misconduct or actions. Plaintiff need not produce a "smoking gun" or any other
form of definitive proof of the defendant's intent or conscience. *Whitesides*, supra;
*Cushman v. Trans Union Corp.*, 920 F.Supp. 80, 84 (U.S.D.C. E.D Pa. 1996). The
trier of fact may deduce it from the surrounding circumstances. Id. In *Cushman*, the
court found it adequate that plaintiff "had twice informed the consumer reporting
agency of inaccuracies within her credit report; however, the consumer reporting
agency failed to take action." The court concluded that a jury could reasonably
conclude that the defendant's conduct was willful. Id.

Punitive damages may be awarded for willful violation of any provision of
the FCRA and malice, intent, scienter, or evil motive need not be proven. *Thornton*

*v. Equifax, Inc.*, 619 F.2d 700 (8th Cir. 1980); *Fischl v. GMAC*, 708 F.2d 143 (5th Cir. 1983); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986)(La.); *Boothe v. TRW Credit Data*, 768 F.Supp. 434 (U.S.D.C. S.D. N.Y. 1991); *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F.Supp. 972 (U.S.D.C. M.D. Fla. 1985); *Jones v. Credit Bureau of Huntington, Inc.*, 399 S.E.2d 694 (W.Va. 1990); *Nitti v. Credit Bureau of Rochester, Inc.*, 84 Misc.2d 277, 375 N.Y.S.2d 817; *Trans Union Corporation v. Crisp*, 896 S.W.2d 446 (Ark. App. 1995). A reckless indifference to plaintiff's rights under the Fair Credit Reporting Act ("FCRA") will justify an award of punitive damages. *Collins v. Retail Credit Co.*, 410 F.Supp. 925 (U.S.D.C. E.D. Mich. 1987).

The Plaintiff has been denied credit because of the inaccurate and misleading information published by Equifax to its subscribers. Equifax knowingly failed to update and correct the disputed and inaccurate information in all of the Plaintiff's credit files. Equifax never revealed to the Plaintiff that he had three credit files. Equifax consciously disregarded the Plaintiff's rights under the FCRA. Therefore, the Plaintiff is entitled to Summary Judgment on the issue of liability against Defendant Equifax and the Plaintiff is entitled to punitive damages, in an amount

determined by the enlightened conscious of a jury.

## IV.  CONCLUSION

Plaintiff respectfully asserts that Equifax has violated the FCRA mandates under 1681e(b) by repeatedly issuing consumer credit reports about plaintiff which contained gross inaccuracies absent reasonable procedures to avoid such violations. Defendant Equifax knew that it had two credit files for the Plaintiff, but failed to ensure that both credit files contained accurate information regarding the Plaintiff's credit history.  Equifax violated its personnel training duties, under 1681h(c). Further still, Equifax violated its reinvestigation duties, under 1681i(a), on multiple occasions and, like violations under 1681e(b), each is a separate and distinct violation of the FCRA.  Plaintiff seeks summary judgment finding these violations were willful, in all or part, and as to any not deemed willful, alternatively, that those be deemed negligent violations on each count.

## LOCAL RULE 7.1D CERTIFICATION

Pursuant to Local Rule 7.1D, I certify that this Motion for Summary Judgment and Brief In Support have been prepared with Times New Roman – 14 Point, the font and point selections approved by this Court in Local Rule 5.1B.

This 10th day of May, 2004.

Respectfully submitted,

LAW OFFICE OF LISA D. WRIGHT, LLC

By

Lisa D. Wright
Attorney for Plaintiff
Georgia State Bar No. 268781

235 Peachtree Street NE,
Suite 888
Atlanta, Georgia 30303
404-588-1181 (Office)
404-588-1182 (Fax)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CAREY SCOTT NEAL, | ) |
|     Plaintiff | ) |
| | ) CIVIL ACTION |
| | ) FILE NO. 1:03-CV-0761-JEC |
| vs. | ) |
| | ) |
| EQUIFAX INFORMATION SERVICES LLC | ) |
| OLYMPUS SERVICING, L.P., and | ) |
| WILSHIRE CREDIT CORPORATION | ) |
|     Defendants | ) |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the within and

foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR

SUMMARY JUDGMENT AGAINST EQUIFAX INFORMATION SERVICES

LLC ON THE ISSUE OF LIABILITY, upon opposing counsel, by depositing a

copy of same in the United States Mail with adequate postage thereon for prompt

delivery by the United States Postal service and addressed as follows:

Mr. John J. Friedline
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

Mr. Robert E. Mulholland
Savell & Williams
1500 The Equitable Building
100 Peachtree Street
Atlanta, GA 30303

This 10th day of May, 2004.

Respectfully submitted,

LAW OFFICE OF LISA D. WRIGHT, LLC

By: _____
       Lisa D. Wright
       Attorney for Plaintiff
       Georgia State Bar No. 268781

235 Peachtree Street, NE
Suite 888
Atlanta, Georgia 30303
404-588-1181
404-588-1182 (Fax)

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 1 0 2004

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CAREY SCOTT NEAL,<br>    Plaintiff | )<br>)<br>) CIVIL ACTION<br>) FILE NO. 1:03-CV-0761-JEC |
| vs. | )<br>) |
| EQUIFAX INFORMATION SERVICES LLC<br>OLYMPUS SERVICING, L.P., and<br>WILSHIRE CREDIT CORPORATION<br>    Defendants | )<br>)<br>)<br>) |

## PLAINTIFF'S STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT AGAINST EQUIFAX

COMES NOW Plaintiff Carey Scott Neal, and files the following Statement of Material Facts, none of which are disputed.

1.

Plaintiff's Complaint seeks to recover damages as a result of Defendant Equifax Information Services LLC (hereinafter "Equifax") violations of the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.* (Plaintiff's Complaint).

2.

Plaintiff communicated with Equifax to dispute the information reported in the Olympus tradeline and the Wilshire tradeline. (Fluellen depo. - pp. 48).

*1*

94

3.

Equifax had three credit files for the Plaintiff: two in the name of Carey Neal and then one in the name of Scott Neal. (Fluellen depo. – pp. 59).

4.

Equifax's procedure is to disclose to the consumer all of the credit files they have on the consumer. (Fluellen depo. – pp. 60-61).

5.

On September 3, 2002, Equifax received a request that updated information regarding the Olympus tradeline be inserted into the Plaintiff's credit file. (Fluellen depo. - pp. 50).

6.

On September 4, 2002, Equifax completed the investigation of disputed information concerning the Plaintiff in his credit file. (Fluellen depo. - pp. 50).

7.

On September 4, 2002, Equifax received a document which stated the (Olympus) late payments could be removed from the Plaintiff's credit file. (Fluellen depo. - pp. 54).

2

8.

A copy of the revised credit file, which removed the Olympus late payments, was sent to the consumer in regards to this (September 4, 2002) investigation. (Fluellen depo. I – pp. 57).  This revised credit file was for only one of the Plaintiff's Equifax credit files.  (Fluellen depo. -- pp. 67).

9.

Only one of the Plaintiff's credit files was updated on September 4, 2002. (Fluellen depo. – pp. 68).

10.

On November 19, 2002, Equifax received another request for investigation. (Fluellen depo. – pp. 57-58).

11.

The November 19, 2002 request for reinvestigation of information concerning the Plaintiff was regarding the late payments on the Wilshire account. (Fluellen depo. -- pp. 69).

12.

On November 21, 2002 Equifax completed its November 19, 2002 reinvestigation of the Wilshire tradeline and reported to the Plaintiff that the prior paying history had been deleted from the account.  (Fluellen depo. – pp. 70).

3

13.

On November 22, 2002, Equifax received and completed another investigation of the Wilshire account. Equifax reported to the Plaintiff that there were no late payments reporting on the account because there were not any. (Fluellen depo. – pp. 73).

14.

On November 26, 2002. Equifax received the following notification from a credit grantor regarding the Olympus tradeline: "This (Olympus Servicing) was corrected by Equifax Rapid Resolve back in August.  Now it is showing again.  Also, he has two files under Carey Neal and Scott Neal.  Please combine so we can get an accurate score."  (Fluellen depo. – pp. 79).

15.

On December 2, 2002, Plaintiff telephoned Equifax to dispute the information reported in the Olympus tradeline, specifically that a late payment history was reporting on his credit reports. (Fluellen depo. – pp. 85).

16.

On the Plaintiff's March 11, 2003 credit file, Equifax reported the Wilshire Credit Corporation account a zero account balance and a 30-day late payment. (Fluellen depo. – pp. 105).

17.

On the Plaintiff's March 26, 2003 credit report, Equifax reported for the Wilshire account "not more than two payments past due." (Fluellen depo. – pp. 106).

18.

In September 2002, October 2002, and November 2002, Equifax reported the Plaintiff's Olympus account inaccurately as one 30-day late payment, one 60-day late payment and two times 90-days late. (Fluellen depo. – pp. 175).

19.

Sometimes duplicate information is reported when a consumer has two credit files. It is Equifax's procedure for agents to peruse both files to ensure that they address the duplicates. (Fluellen depo. – pp. 100).

20.

When Equifax splits a credit file, it's done manually. A person is doing it. They are to remove the duplicates so that when new reporting comes in via tape it's to go to the one that is already there. It doesn't appear that this was done for Carey Neal. That's why we've got duplicates. (Fluellen depo. – pp. 179).

21.

Equifax's policy is to combine consumer credit files if it can combine them.

There is no sense in having a consumer with two different files needlessly. But if you really cannot do it, then the request is not going to be granted. And looking at the length of this credit file, it doesn't seem possible that they would have been able to successfully combine the credit files. (Fluellen depo. – pp. 80).

22.

Post filing of this lawsuit, one credit file was created for Mr. Neal. (Fluellen deop. – pp. 80).

23.

On November 20, 2002, Am Trust requested Plaintiff's consumer credit report from Equifax and Equifax prepared, issued, sold and published a consumer report to Am Trust about the plaintiff which included that the Plaintiff had been late on his Olympus account one time 30 days late; one time 60 days late; and two times 90 days late. (Fluellen depo. – pp. 178).

24.

On November 20, 2002, Am Trust made a second request for Plaintiff's consumer credit report from Equifax and Equifax prepared, issued, sold and published a consumer report to Am Trust about the plaintiff which included that the Plaintiff had been late on his Olympus account one time 30 days late; one time 60 days late; and two times 90 days late. (Fluellen depo. – pp. 178).

This 10th day of May, 2004.

                    Respectfully submitted,

                    LAW OFFICE OF LISA D. WRIGHT, LLC

                    By:
                         Lisa D. Wright
                         Attorney for Plaintiff
                         Georgia State Bar No. 268781

235 Peachtree Street, NE, Suite 888
Atlanta, Georgia 30303
404-588-1181 (Office)
404-588-1182 (Fax)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CAREY SCOTT NEAL, | ) |
|     Plaintiff | ) |
| | ) CIVIL ACTION |
| | ) FILE NO. 1:03-CV-0761-JEC |
| vs. | ) |
| | ) |
| EQUIFAX INFORMATION SERVICES LLC | ) |
| OLYMPUS SERVICING, L.P., and | ) |
| WILSHIRE CREDIT CORPORATION | ) |
|     Defendants | ) |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the within and

foregoing PLAINTIFF'S STATEMENT OF MATERIAL UNDISPUTED FACTS

IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST

EQUIFAX, upon opposing counsel, by depositing a copy of same in the United

States Mail with adequate postage thereon for prompt delivery by the United States

Postal service and addressed as follows:

Mr. John J. Friedline
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

Mr. Robert E. Mulholland
Savell & Williams
1500 The Equitable Building
100 Peachtree Street
Atlanta, GA 30303

This 10th day of May, 2004.

Respectfully submitted,

LAW OFFICE OF LISA D. WRIGHT, LLC

By: _____
Lisa D. Wright
Attorney for Plaintiff
Georgia State Bar No. 268781

235 Peachtree Street, NE
Suite 888
Atlanta, Georgia 30303
404-588-1181
404-588-1182 (Fax)

9

# EXHIBIT 1

# Condensed Deposition of

# ALICIA FLUELLEN

## Date: December 1, 2003

## Case: NEAL v. EQUIFAX, ET AL.
## No.:  1:03-CV-0761-JEC
## Volume:  I

## Reported by: MARCIA ADAMS, CSR

D'AMICO GERSHWIN, INC.
Phone: 770-645-6111
Fax: 770-643-1317
www.AtlantaCourtReporter.com

Neal v. Equifax, et al.                                          12/1/03 - Alicia Fluellen

Page 48

1    particular counsel as far as in-house goes that makes those

2    decisions?

3         A.   Well, John Friedline, I believe he's working on

4    the case.

5              MS. AVERETT:  It depends on the attorney working

6         on the case.

7    BY MS. WRIGHT:

8         Q.   And do you know if Mr. Neal actually communicated

9    with Equifax to dispute the information reported on the

10   Olympus trade line?

11        A.   When?

12        Q.   At any point.

13        A.   Yes.  I saw some ACIS archive cases.

14        Q.   And do you know if Mr. Neal actually communicated

15   with Equifax to dispute the information reported in the

16   Wilshire trade line?

17        A.   Well, you know, now that I'm thinking about it,

18   there was a quite a bit of Rapid Resolve cases.  And I would

19   have to look at them to refresh my memory but, yeah, I think

20   there were a couple of Rapid Resolve cases for both Wilshire

21   and Olympus.

22        Q.   Well, I've got everything you guys gave us so

23   we'll hopefully go through refreshing.

24        A.   I'm just going off memory now so that's always

25   dangerous.

Neal v. Equifax, et al.                                    12/1/03 - Alicia Fluellen

Page 50

1    information?

2        A.   Okay.  I'm sorry, I don't want to mess this up so

3    do you want me to just take the first case off or what?

4             MS. AVERETT:  There are a lot of different ones in

5        that file.

6    BY MS. WRIGHT:

7        Q.   The document I received just has consecutive page

8    numbers on it, I believe.

9        A.   No, there are quite a few.  There a quite a few

10   disputes within them.

11            (Off the record.)

12            (Whereupon, the court reporter marked Plaintiff's

13       Exhibit Nos. 5 through 11 for identification, which

14       were retained by Ms. Wright.)

15   BY MS. WRIGHT:

16       Q.   So now that we've organized the different

17   documents, can you identify what Exhibit 4 is?

18       A.   Yes.  Exhibit 4 is an ACIS archive record of an

19   investigation that was created and completed on

20   September 4th of 2002.

21       Q.   And how did you identify that it was created on

22   September 4th?

23       A.   Well, I looked at the document on Bates No. 0014.

24       Q.   Okay.

25       A.   And just basically from my experience I can look

Neal v. Equifax, et al.                                    12/1/03 - Alicia Fluellen

Page 54

1    received a document that fit the criteria that I discussed

2    earlier that states that the late payments could be removed.

3         Q.    Would that be documents you received from a

4    furnisher subscriber or would that be documents you received

5    from Mr. Neal?

6         A.    No.   These are documents coming from the mortgage

7    company, the assumption being that Mr. Neal received them

8    from the mortgage company and gave them to the Rapid Resolve

9    customer.

10        Q.    And do you or does Equifax have a copy of the

11   document that it received?

12        A.    Yes.   The Mortgage Services would keep copies.

13        Q.    Equifax Mortgage Services?   Is that what you're

14   saying?

15        A.    Yes.   They should keep copies of their documents.

16        Q.    And can you go through page 13, of what starts

17   with ORG CA, which is the second set of information?   Can

18   you explain what that set of information means and what the

19   other two that follow it mean?

20        A.    Oh, sure.   The ORG, when you see that, that

21   denotes what the information looked like when the

22   investigation was started.   And then the UPD line represents

23   what the agent typed in.

24        Q.    Okay.

25        A.    And in this instance it just so happens it matched

Neal v. Equifax, et al.                                         12/1/03 - Alicia Fluellen

1          A.    It is the date.  And then the last set of numbers

2     is the Social Security number.

3          Q.    Okay.

4          A.    And then the other two numbers I don't know.  I

5     believe it has something to do with the form, the printing.

6          Q.    And then if you can identify pages 5, 6, 7, 8, and

7     9 if there's a collective identification for that?

8          A.    Yes.  It's a copy of the revised credit file that

9     was sent to the consumer in regards to this investigation.

10         Q.    And do you know if there would be any other

11    records that would identify anything prior to this in terms

12    of disputes from Mr. Neal or any other information prior to

13    this being originated?  I guess you said the docs were

14    received on September 3rd of 2002?

15         A.    Yes.  That's when I show it was received.  No, I

16    don't see anything prior to that.

17         Q.    And if Mr. Neal contacted Equifax directly to

18    dispute that information, where would that information show

19    up?

20         A.    In the same way, same manner.

21         Q.    Let's go to Exhibit 5.  And if you could identify

22    what Exhibit 5 represents.

23         A.    Yes.  It's an ACIS archive investigation copy

24    of -- it looks as though we received another Rapid Resolve

25    and this one was began and completed on -- it began

 1    November 19th.  We created it November 19th.  It was

 2    completed on the 21st.

 3         Q.   I'm sorry, one more question back on Exhibit 4.

 4    Can you tell me if there was a freeze on Mr. Neal's credit

 5    report for the three months to update the paying history or

 6    to freeze it so you could receive information from the

 7    original furnisher?

 8         A.   Yes.  I see it but I want to show it to you.  It's

 9    on the credit file on 009.  It actually says three-month

10    freeze.  It's at the very tiptop.

11         Q.   Okay.

12         A.   And then you can actually see the agent putting it

13    on on 014.

14         Q.   I'm sorry?

15         A.   You can actually see the agent, where they placed

16    it, on 014.  If you look at the UPD CC line middleways

17    through the page --

18         Q.   Okay.

19         A.   -- 072, right here, that's the actual freeze

20    code.

21         Q.   And from this report, again, on Exhibit 4, was any

22    information updated with respect to Wilshire Credit Corp.?

23         A.   Wilshire, no.

24         Q.   We can go back to Exhibit 5.

25         A.   Uh-huh.

1     Q.    Okay.  On the first page of Exhibit 5 can you
2     explain the third line after the row of stars -- actually
3     the second row of stars, if you will, where it says FS
4     operator advice, do not combine?

5     A.    Yes.  That's a code that we will place on if we
6     manually separate a credit file.  It's a way for us to
7     prevent credit files from merging.  The true idea is to keep
8     two individuals, two different individuals' credit files
9     from merging together and becoming a mixed file.  Or if we
10    have a situation where someone's credit file is becoming too
11    big, we'll try and keep the data -- try to control the data
12    a little bit better by separating the files out so that they
13    could spill out nicely onto two separate credit files.

14    Q.    From any of the documents that you got so far, can
15    you tell how many credit files Mr. Neal had?

16    A.    Yeah.  It looks at this point that from Document
17    or Exhibit 4 to Exhibit 5 these credit files have been split
18    apart.  There are two.  These are two different files.

19              (Off the record.)

20    BY MS. WRIGHT:

21    Q.    Can you tell, again, going through the rest of the
22    documents you have in front of you, exactly how many credit
23    files there were for Carey Scott Neal?

24    A.    It looks as though there are three.  We have two
25    in Carey Neal and then Scott Neal.

1       Q.    And would that be one in Scott Neal or would that

2    be two in Scott Neal?

3       A.    I just see one.

4       Q.    What are the procedures for one person having one

5    credit file?

6       A.    I'm sorry, what do you mean?

7       Q.    You said sometimes a file is split if it's too

8    big.  The Plaintiff's name is Carey Scott Neal and it looks

9    like you've identified two credit files under Carey Neal and

10   then another file under Scott Neal.  Why does he have two

11   files under different names -- three files is what you've

12   identified and under different names.

13      A.    Right.  The two files and -- again, I can only

14   assume because the characteristics are right that we have

15   the Do Not Combine, which is actually put on by a person --

16   that's the only way you can actually put a Do Not Combine on

17   a credit file and the fact that you have Carey Neal that

18   have the same File Since date but the information is a

19   little bit different, especially if you look at the inquiry

20   section of the credit files.  One is seemingly longer than

21   the other.  So this lets me know these are two different

22   credit files.

23            But the procedure for that is to disclose to the

24   consumer.  Some consumers' credit files are so big that I

25   have seen them carry over to three or four.  But our

1   procedure is to disclose to the consumer all that we have on
2   them.

3       Q.   Okay.

4       A.   Now, as far as Scott Neal, this name -- and the
5   only way we get names is from the credit grantors or data
6   furnishers so it appears as though a data furnisher was
7   actually reporting information in on Scott Neal.  And
8   because of the attempt to not confuse someone's credit file
9   with someone else, this system will not automatically link
10  files together if you got different addresses and a
11  different name.  So that is the procedure there, is to not
12  automatically merge two credit files together because you
13  got them living in the same city.

14          But if we have an agent that will examine the
15  credit file or if the consumer accepts ownership of the
16  items on each credit file and if it's possible, if the
17  system allows, we will try to combine the files down as much
18  as possible.  But sometimes it is better to have three
19  credit files as opposed to one big credit file where they're
20  continually going to have system problems or error messages
21  back in from the credit grantor.

22      Q.   Can you go through Exhibits 4 through 11 and tell
23  me if the date of birth is the same on each one of those
24  exhibits?

25      A.   Uh-huh, yes.

Neal v. Equifax, et al.                                          12/1/03 - Alicia Fluellen

Page 67

1    just received the one file.

2         Q.   So he didn't receive the other two files, if you

3    will, at this point?

4         A.   No.

5         Q.   How would he know that there's three files out

6    there for him?

7         A.   He would receive three different envelopes.

8         Q.   But we just identified on Exhibit 4 that he

9    received one.

10        A.   That question was a follow-up to --

11        Q.   Yes.  It's a follow-up as well as just a general.

12   You said Exhibit 4 was the file that was sent back to

13   Mr. Neal saying this was the updated information.

14        A.   Uh-huh.

15        Q.   How does he know that I have two other files that

16   may need information updated as well?

17        A.   I don't know if he knew that he had three files.

18   The credit grantor may have told him.  He may have received

19   three files in the past.  I don't know.  But, yeah, there is

20   just one that was sent.  So at this particular point in

21   time we can go on the assumption that he sees one, he knows

22   of one.

23        Q.   So if there were anything to be updated in the

24   other two files, would it have been updated at that point?

25        A.   We were to take that responsibility and do such

Neal v. Equifax, et al.                                          12/1/'03 - Alicia Fluellen

                                                                              Page 68

 1    and send him the copy.

 2        Q.   From Exhibit 4 or any of the other exhibits, can

 3    you identify if he was sent information on any changes made

 4    to any other files besides this file?

 5        A.   No.  On September 4, 2002, that was the only file

 6    he was sent.

 7        Q.   Can you tell if the information on Exhibit 4 is

 8    from the same file as Exhibit 5?

 9        A.   I think -- yeah, I said earlier it appears to be

10    different.

11        Q.   How is it identified to you that Exhibit 5 is a

12    different credit file?

13        A.   Just basically looking at the inquiry section,

14    it's much, much longer.  That in itself tells me that

15    Mr. Neal had another file.

16        Q.   Can you identify what Exhibit 5 is?  I don't

17    remember if you did already or not because it's been a

18    while.

19        A.   Yes, I did.  I said it's a Rapid Resolve case that

20    we completed.

21        Q.   When did it begin?

22        A.   We created it on November 19th and it was

23    completed November 21st of 2002.

24        Q.   And who originated this Rapid Resolve?

25        A.   It's the same mortgage company that appears as the

Neal v. Equifax, et al.                                    12/1/'03 - Alicia Fluellen

1    previous, 401ZB01238.  And the requester was April.

2         Q.    Which page are you on?  I'm sorry.

3         A.    21, which is the third page from the back.

4         Q.    Is there anything on Exhibit 5 that would

5    identify who the company was that April worked for as far as

6    the subscriber?

7         A.    401ZB01238.

8         Q.    I meant in terms of is there anything, do you

9    know, that would identify what the code is?

10        A.    No, no, no.

11        Q.    And can you identify what this Rapid Resolve was

12   for?

13        A.    The creditor?

14        Q.    Well, what was the nature of the dispute?

15        A.    Wilshire, updated late payments on the Wilshire

16   account.

17        Q.    Where are you referencing?

18        A.    I'm sorry, the last one, 23.

19        Q.    Okay.  You stated that this request originated

20   from a mortgage company to change the information, correct?

21        A.    Yes.

22        Q.    And on the last page of this exhibit can you

23   identify what the Consumer Comments, where they would have

24   originated from, who is the consumer in that respect?

25        A.    I don't understand.

 1          Q.    Is the consumer April with this code or is the

 2     consumer Scott Neal or Carey Scott Neal, Mr. Neal?

 3          A.    The consumer is Carey Neal.  But you want me to

 4     identify it on the back of here?

 5          Q.    On the last page it says, Consumer Comments.

 6          A.    Oh, those are comments we send to the consumer,

 7     I'm sorry.  That letter that we generate, that's where we do

 8     that.

 9          Q.    And where it says a couple lines above that,

10     comments, docs received, accepted, would those again be

11     documents you received from April, who is identified as the

12     person that originated the Rapid Resolve?

13          A.    Yes.

14          Q.    And on what's Bates-stamped page 19, can you

15     identify what this document is?

16          A.    It's a copy of the letter that we send to the

17     consumer.  That explains the results of their investigation.

18          Q.    And can you explain why it says the prior paying

19     history has been deleted from this account?

20          A.    Uh-huh.  That's what we did.

21          Q.    Why would the prior paying history be deleted from

22     the account?

23          A.    That's what the letter said.  That's the

24     assumption, without looking at the letter.  Prior paying

25     history is the late payment history.

Neal v. Equifax, et al.                                    12/1/'03 - Alicia Fluellen

1    investigation represents?

2        A.    Well, it's the credit file under the name of Scott

3    Neal.

4        Q.    Then can you identify Exhibit 7?

5        A.    Exhibit 7 is another Rapid Resolve case that we

6    received and completed on November 22nd, 2002.  This case --

7    or investigation, pardon me, was created in the file of

8    Carey Neal and it was another Rapid Resolve.

9        Q.    What was the nature of the disputed information?

10       A.    Here they're addressing Wilshire Credit Corp.  And

11   we told them there's no late payments reporting on that

12   account because there were not any.

13       Q.    Can you explain why Exhibit 7, also dated

14   November 22nd investigation, was originated, if you will?

15       A.    Yes.  It appears as though according to our

16   procedure that the agent that was processing this Rapid

17   Resolve received the two credit files.  And they disclosed

18   both credit files to the consumer.

19       Q.    So was Exhibit 7 a new, if you will,

20   investigation or was it a continuation from Exhibit 6?

21       A.    Well, they're the same.  I mean, it was done at

22   the same time, just a different credit file.  They're

23   addressing both credit files.  If you want to say it's a

24   continuation, I guess we could.

25       Q.    And would the -- I think you said agent is the

Neal v. Equifax, et al.                                      12/1/'03 - Alicia Fluellen

1   says, Do Not Combine but then you've corrected the

2   information on both of them, so would anyone have said,

3   let's review this account or these two files and see if

4   maybe they should be combined because maybe they are, in

5   fact, one person?

6        A.    No.   I don't know if that was a concern or not.

7        Q.    Can you refer to your Bates Stamp Page 62 and read

8   the information under the other applicable information

9   that's noted?  Could you read it out loud?

10       A.    I'm sorry.  This was corrected by Equifax Rapid

11  Resolve back in August.  Now it is showing again.  Also, he

12  has two files under Carey Neal and Scott Neal.  Please

13  combine so we can get an accurate score.

14            Now, depending on the length of the file, even

15  though a credit grantor may request that we combine a credit

16  file, it may not be possible because if you combine the

17  credit file, then they won't get a score at all.  So what

18  will happen is they will get two scores and I think the --

19  if I'm not mistaken, most mortgage companies will choose

20  between the two files the one that has the most information.

21  But, yeah, I see that they did request it but it really may

22  not be possible.

23       Q.    Can you determine if any person such as the

24  fictitious Glenn King name, if you will, or --

25       A.    She's not fictitious.

Neal v. Equifax, et al.                                                        12/1/03 - Alicia Fluellen

Page 80

1          Q.    -- I don't mean she's fictitious.  I meant it's a
2     code for the actual person's name -- would she have reviewed
3     this information from this Rapid Resolve to say, maybe Carey
4     Neal and Scott Neal are, in fact, one person as Equifax
5     Rapid Resolve says and combine or have done any kind of
6     review?

7          A.    Yeah.  That is -- the policy is to do such if you
8     can combine them.  There's no sense in having a consumer
9     with two different files needlessly.  But if you really
10    cannot do it, then the request is not going to be granted.
11    And looking at the length of this credit file, it doesn't --
12    just from my experience it does not seem possible that they
13    would have been able to successfully combine the credit
14    files and have the credit grantor reach a score.

15         Q.    My question is, is there any way from Exhibit 8 or
16    9 or any of the other exhibits that we've marked at this
17    point to determine if a supervisor or someone did, in fact,
18    review these two files to determine if Carey Neal and Scott
19    Neal were the same person?

20         A.    No.  There's no way for me to tell that.

21         Q.    And when you put the code on there -- and I'm
22    saying you in terms of Equifax says Do Not Combine, would
23    anyone ever review that status to determine whether or not
24    something actually should be combined?

25         A.    Yes.  The consumer contacts us and asks us, you

Neal v. Equifax, et al.                                                    12/1/03 - Alicia Fluellen

 1    Can you identify if that's the same entity as Olympus

 2    Servicing, L.P.?

 3         A.    It is.  I could tell because it's there on the

 4    page number Bates-stamped 046.

 5         Q.    Can you identify where this investigation

 6    originated from?

 7         A.    Phone call.

 8         Q.    Who called?

 9         A.    The consumer.

10         Q.    What did he call in to say?

11         A.    The item contention was the Olympus's servicing.

12    The late payment history was reporting.  He was disputing

13    the late payment history.

14         Q.    Okay.  And what happened after Mr. Neal called in?

15         A.    It appears as though they had some type of

16    conversation and they put a comment on the document

17    Bates-stamped 045 that the consumer was mailing documents

18    in.  So the consumer may have had a letter or something that

19    he wanted to attach or use as relevant information.  But at

20    this same token an investigation was started and it was

21    completed on December 16th.

22         Q.    When Mr. Neal phoned in and started this dispute

23    or this investigation, is there any way to determine if your

24    system looked for the other Mr. Neals with the same Social

25    Security number or the same date of birth and said, oh,

1    two credit files.  I can't tell.

2        Q.    Would the credit file confirmation number match up

3    on anything from the earlier exhibits that we had to

4    determine if they correspond?

5        A.    They correspond.  They do correspond.  At any

6    rate, we're still dealing with two different credit files.

7        Q.    Is there any way to determine if, in fact, the

8    information was deleted from one file but not necessarily

9    the other file?

10       A.    Well, yeah, because our archive shows that it was

11   deleted because when we look at the Wilshire Credit in our

12   archive, it's showing I1.

13       Q.    Would there be any way for Mr. Neal to determine

14   that this was being reported in different files?

15       A.    Not from what I could tell.  Not at this

16   particular point in time, no.

17       Q.    And when you're referencing or when you stated

18   earlier that sometimes a consumer would have two files

19   because there's too much to put in one file, when that

20   happens, is duplicate information retained in, say, File 1

21   and File 2 or is File 2 a continuation from File 1?

22       A.    Sometimes duplicate information is reported.  And

23   it's up to our agent.  Our procedure is for them to peruse

24   both files to ensure that they address the duplicates.

25       Q.    Exhibit 17, if you could identify this exhibit.

Neal v. Equifax, et al.                                    12/1/03 - Alicia Fluellen

Page 105

1        A.     Olympus?  Okay, zero, account balance zero,
2   current.  The status is current.
3        Q.     There's no late repays reported on that, correct?
4        A.     No, it doesn't appear.  It doesn't read like it.
5        Q.     We've got Exhibit 20.  If you can identify
6   Exhibit 20.
7        A.     Okay.  It appears to be a credit file.
8        Q.     Can you tell me the date?
9        A.     March 11th, 2003.
10       Q.     And can you identify what Equifax is reporting for
11  Wilshire Credit Corporation?  It's on that first page there
12  at the bottom.
13       A.     It has a zero balance and the 30-day late payment
14  that we saw in that other credit file.
15       Q.     Do you have any explanation as to why that 30-day
16  late would still be reporting on there when there were
17  disputes and documents sent back to Mr. Neal that the paying
18  history had been corrected?
19       A.     That appeared to be a mistake on behalf of the
20  maintenance reviewer because the letter we saw said that the
21  prior paying history had been deleted but Mr. Neal received
22  a credit file that showed the I2 status.  That's the
23  operator just not paying attention when he's mailing out the
24  credit report.
25       Q.     Do you know if this credit report would identify

Neal v. Equifax, et al.                                      12/1/03 - Alicia Fluellen

1    multiple files for Equifax?

2         A.    (No response.)

3         Q.    If you don't know, don't worry about it.

4         A.    It may.  I don't know how to read it.  That's the

5    best I can do.

6         Q.    Exhibit 21.

7         A.    Uh-huh.

8         Q.    Can you identify what this document is?

9         A.    It looks like another credit file somewhere,

10   consumerinfo.com.

11        Q.    Can you identify the date?

12        A.    March 26, 2003.

13        Q.    Can you identify if Equifax was reporting

14   information for Mr. Neal?

15        A.    Yes.  It appears it was.

16        Q.    And can you turn to -- it's got a couple different

17   page numbers on it.  So in the first corner, the little P

18   right there, it says page 31 and then it says actually

19   printed on the form page 30 of 33.

20        A.    Okay, uh-huh.

21        Q.    Can you identify what's being reported by Equifax

22   for Wilshire Credit Corporation?

23        A.    It says, not more than two payments past due,

24   whatever that means.

25        Q.    To your knowledge, would that reflect that it was

# Condensed Deposition of

# ALICIA FLUELLEN

## Date: December 2, 2003

## Case: NEAL v. EQUIFAX, ET AL.
## No.:  1:03-CV-0761-JEC
## Volume:  II

## Reported by: DANIEL GERSHWIN, CSR

**D'AMICO GERSHWIN, INC.**
**Phone: 770-645-6111**
**Fax: 770-643-1317**
**www.AtlantaCourtReporter.com**

1    referenced earlier --

2         A    Uh-huh (affirmative).

3         Q    -- on the exhibits yesterday?

4         A    Yes.  And then the slash is who it is.  Behind

5    the end user, the member number, there's a slash and then

6    it's for who.

7              Like, for example, on September 25th, 2002, you

8    have end user; and then the 401ZB03168, that's their

9    member number, and you have slash new, N-E-W, that's who

10   it is.  That's who they're pulling it for.

11        Q    And they would have received for any requests

12   or inquiries in September of 2002 or October of 2002 or

13   November of 2002 the information regarding Wilshire

14   reporting as account paid off 30 days late?

15        A    Yes.

16        Q    And if we can go to the exhibits representing a

17   second credit file which, again, is Exhibits 23A, 24B, and

18   25A.

19             (Discussion held off the record.)

20        Q    (By Ms. Wright)  And let me first ask a couple

21   of questions before we go through and do what we did with

22   the prior stack.

23             Exhibit 23A, can you identify or confirm that

24   Olympus Servicing is reporting one 30-day late payment --

25   and I'm on Bates No. 105 -- one 60-day late payment, and

Neal v. Equifax, et al.                                    12/2/03 - Alicia Fluellen (Vol. II)

Page 178

 1    that received this credit file were EU AMTR.

 2         Q    AmTrust I think is what it is.

 3         A    November 20th of 2002.  It looks like they

 4    pulled two on November 20th, 2002.  And Nationwide,

 5    January 23rd, 2003.  Some end user for a Banc, B-A-N-C.  I

 6    don't know who that is, though.  But it's January 24th,

 7    2003.  And we've got -- I'm sorry.  No.  The end user is

 8    February 5th, 2003.  And we got Omni National that pulled

 9    it February 12th, 2003.

10         Q    Okay.  And on the frozen scans, are there any

11    credit denial codes that are listed on the scans?

12         A    No.  We never know.  We never know if they

13    grant or deny credit.

14         Q    And I apologize if this question sounds

15    repetitive, but can you explain to me why what we've

16    identified as basically the Carey Neal file No. 1 and

17    Carey Neal file No. 2 exists when there's duplicate

18    information in terms of Wilshire's reporting on one and

19    Wilshire's reporting on another and the same with Olympus'

20    reporting on one and Wilshire -- what the reason would be

21    for that?

22         A    I'm sorry.  Say it again now.

23         Q    I know you described yesterday that if a

24    person's credit file becomes too big, another file would

25    be created?